UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| JOHN DUFFIELD and KAYE DUFFIELD, <br><br> Plaintiffs, <br><br> vs. <br><br> MPC PIPELINES, INC., DUFFIELD CONSTRUCTION, LLC, MURPHY PIPE AND CIVIL, LLC, and DAVID KINSELLA, <br><br> Defendants. | CIV. 16-5038-JLV <br><br><br> ORDER |

On April 27, 2016, plaintiffs John and Kaye Duffield ("the Duffields") filed a lawsuit in South Dakota state court. (Docket 1-2). Defendants Duffield Construction, LLC ("Duffield Construction"), David Kinsella, MPC Pipelines, Inc. ("MPC") and Murphy Pipe and Civil, LLC ("Murphy Pipe"), removed the case to this court on May 31, 2016. (Docket 1). Plaintiffs filed an amended complaint on June 6, 2016. (Docket 7). On June 20, 2016, defendants filed a motion to change venue pursuant to 28 U.S.C. § 1404(a). (Docket 11). Defendants also filed a motion to dismiss the complaint for failure to state a claim, or alternatively, a motion for a more definite statement. (Docket 8). Plaintiffs filed briefs opposing defendants' motions. (Dockets 15 & 16). Defendants filed briefs in reply to plaintiffs' opposition briefs. (Dockets 21 & 22).

## FACTS

John and Kaye Duffield started the construction business Duffield Construction in Rapid City, South Dakota, in 1991. (Docket 7 at p. 4). They grew the business for over two decades and developed construction specialties. Id. In 2014, MPC, a global pipeline business, approached the Duffields about purchasing Duffield Construction. Id. at pp. 4-5.

In 2015, the Duffields agreed to sell Duffield Construction to MPC by executing a stock purchase agreement. Id. at p. 5. Murphy Pipe, a business entity related to MPC, agreed to employ John Duffield for three years by executing an employment agreement. Id. at pp. 5-6. David Kinsella, the General Manager and President of Murphy Pipe, executed the employment agreement on behalf of the company. (Docket 10-1). The employment agreement Mr. Duffield and Murphy Pipe signed in 2015 entitled Mr. Duffield to specific payments in addition to a salary: 3 percent of the revenue from MPC's contracts in the United States up to $50 million in revenue, and 1 percent of the revenue beyond $50 million. (Docket 7 at p. 5). Plaintiffs refer to these payments as equity payments. Id. at pp. 5-6.

Later in 2015, Mr. Kinsella terminated Mr. Duffield's employment with Murphy Pipe. Id. at p. 8. Plaintiffs allege Mr. Duffield stopped receiving equity payments from Murphy Pipe on November 9, 2015. Id. Plaintiffs claim during Mr. Duffield's employment with Murphy Pipe, Mr. Kinsella made oral statements to third parties asserting Mr. Duffield committed criminal acts, is dishonest and is a thief. Id. at pp. 8-9.

After defendants removed the lawsuit to federal court, plaintiffs filed an amended complaint stating nine causes of action.  Id. at pp. 9-18.  Plaintiffs allege fraud, negligent misrepresentation, tortious interference, breach of contract, constructive trust, unjust enrichment, money had and received, aiding and abetting, and slander.  Id.

## ANALYSIS

**DEFENDANTS' MOTION TO CHANGE VENUE**

**I. Is the employment agreement's forum selection clause enforceable?**

In their motion to change venue, defendants argue under the employment agreement's forum selection clause and 28 U.S.C. § 1404(a) the court should transfer this case to the United States District Court for the District of Colorado.  (Docket 12 at p. 1).

**A. Applicable law**

The court has diversity jurisdiction over this case.  28 U.S.C. § 1332.  Federal courts hearing cases in diversity apply the forum state's choice of law rules.  See Retail Associates, Inc. v. Macy's East, Inc., 245 F.3d 694, 697 (8th Cir. 2001).  South Dakota courts have "generally recognized that parties may agree to be bound by the law of a particular state," and are free to choose which state's law will apply, subject to "overriding public policy concerns."  See Butler Mach. Co. v. Morris Const. Co., 682 N.W.2d 773, 776 (S.D. 2004) (citations omitted).

Although the parties dispute issues surrounding the employment agreement's forum selection clause, they do not directly contest the

3

agreement's choice of law provision.  The employment agreement provides Colorado law will apply to interpretation of the contract and litigation arising from the contract. [1]  (Docket 22-2 at pp. 4-5).  The court considers any tension between Colorado law and South Dakota public policy issue-by-issue.

The court proceeds applying Colorado law.[2]

**B. Contract interpretation**

The parties disagree on whether to construe the employment and stock purchase agreements together.  The court addresses this issue at the outset because it is central to plaintiffs' argument against defendants' motion to change venue.

Plaintiffs argue the court must construe the agreements as a whole. (Docket 16 at p. 6).  Plaintiffs point out each agreement refers to the other at one point, and the parties executed them on the same day.  Id. at pp. 5-6.  In plaintiffs' view, the applicable law supports interpreting both agreements as a whole.  Id. at pp. 6-7.  Plaintiffs go on to argue once the court reads the agreements together, the forum selection clause in the employment agreement

---

[1]The parties' briefing on defendants' motion to dismiss focuses on the choice of law provision in the employment agreement.  See Dockets 9 at pp. 2-3, 15 at p. 2, & 21 at pp. 2-3.  The parties agree the forum's choice of law rules apply, and plaintiffs argue their analysis on construing the employment and stock purchase agreements leads to an application of South Dakota, not Colorado law.  (Docket 15 at p. 2).  The court finds the plaintiffs' analysis does not negate the employment agreement's choice of law provision.

[2]In this section, the court addresses the employment agreement and not the stock purchase agreement because it is apparent from the complaint plaintiffs' causes of action involve the employment agreement and not the stock purchase agreement.  (Docket 7 at pp. 9-18).

4

becomes invalid because it conflicts with the stock purchase agreement's forum selection clause.  Id. at pp. 7-8.

Defendants' position is the agreements should not be read together as plaintiffs request.  (Docket 22 at pp. 4-7).  Defendants claim the proper reading of the cross-references between the agreements does not lead to interpreting the documents as a whole.  Id.  Defendants assert the applicable case law goes against plaintiffs' position on contract construction.  Id. at p. 6.

Under Colorado law, "[i]f a simultaneously executed agreement between the same parties, relating to the same subject matter, is contained in more than one instrument, the documents must be construed together to determine intent as though the entire agreement were contained in a single document."[3] O'Reilly v. Physicians Mut. Ins. Co., 992 P.2d 644, 648 (Colo. App. 1999); see In re Application for Water Rights of Estes Park v. Northern Colorado Water Conservancy District, 677 P.2d 320, 327 (Colo. 1984).  MPC and the Duffields executed the stock purchase agreement.  (Docket 22-1 at p. 1).  Murphy Pipe, through David Kinsella, and John Duffield executed the employment agreement.  (Docket 22-2 at p. 1).  The parties executed both agreements on April 30, 2015.  (Docket 16 at p. 5).  Each agreement mentions the existence of the other agreement at a particular point.  Id. at pp. 5-6.  Applying Colorado law to these facts, plaintiffs claim interpreting the agreements together

---

[3]Applying this rule of law does not violate South Dakota public policy. See Kramer v. William F. Murphy Self-Declaration of Trust, 816 N.W.2d 813, 815 (S.D. 2012) (stating a parallel rule of contract construction).

5

necessarily invalidates the forum selection clauses because they call for different jurisdictions in the event of litigation. Id. at pp. 7-8.

However, even if the court reads the employment and stock purchase agreements together, plaintiffs' argument does not prevail. The purpose of the contract construction plaintiffs seek is to determine the intent of the contracting parties. See In re Application for Water Rights of Estes Park, 677 P.2d at 327; Sterling Colo. Agency, Inc. v. Sterling Ins. Co., 266 F.2d 472, 476 (10th Cir. 1959). Applying this general interpretation does not entail fusing each provision of the separate instruments. See Sterling, 266 F.2d at 476; LPG Holdings, Inc. v. Casino America, Inc., No. 99-1037, 2000 WL 1637536, at *8-9 (10th Cir. Nov. 1, 2000) (unpublished).

Section 13 of the employment agreement states Colorado law shall govern the agreement and any litigation arising under the agreement shall take place "in the federal or state courts located in Denver County, Colorado." (Docket 22-2 at p. 4). Section 17 reiterates some of Section 13 but is slightly broader, providing any legal theory "arising out of or relating to [the employment agreement] or [Mr. Duffield's] employment with [MPC] shall" be litigated as Section 13 directs. Id. at pp. 4-5. In the stock purchase agreement, Section 10.9 states the laws of Delaware govern the agreement, and any litigation arising from the agreement shall occur in Delaware federal or state courts. (Docket 22-1 at p. 5).

If the court reads the two agreements together, the most natural understanding of the forum selection clauses is the parties intended to resolve

6

issues connected with employment as provided in the employment agreement's clauses on law and forum choice.  As for disagreements related to the stock transaction, it is most natural to conclude the parties intended to follow the law and forum choices in the stock purchase agreement.  The interpretation applied by plaintiffs does not achieve their goal of invalidating the forum selection clauses.  See Sterling, 266 F.2d at 476; LPG Holdings, Inc., 2000 WL 1637536, at *8-9.

Even if the court interprets the employment and stock purchase agreements as a whole, the court finds the result is not the invalidation of each agreement's forum selection clause.

### C. Enforceability of the forum selection clause

Because defendants seek enforcement of the employment agreement's forum selection clause, the court must determine whether the clause is enforceable.

The United States Supreme Court established the federal standard for determining a forum selection clause's enforceability in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972).  In resolving a motion to dismiss, the United States Court of Appeals for the Eighth Circuit held "a district court sitting in diversity jurisdiction and applying federal law must apply the standard articulated in Bremen to the question of whether to enforce a forum selection clause . . . ."  Union Elec. Co. v. Energy Ins. Mut. Ltd., 689 F.3d 968, 973 (8th Cir. 2012).  The Eighth Circuit explained "[w]hile Bremen provides the proper analysis for determining the enforceability of a forum selection clause,

7

in this circuit, consideration of the public policy of the forum state must be part of that analysis." Id. at 974 (citation omitted); see also JTV Mfg., Inc. v. Braketown USA, Inc., 110 F. Supp. 3d 900, 905-06 (N.D. Iowa 2015) (citing Union Electric in concluding federal law applies to a forum selection clause's enforceability). Although Union Electric involved a motion to dismiss and this case involves a motion to change venue under 28 U.S.C. § 1404(a), the court finds Union Electric's ruling applies to this case. See Heartland Family Services v. Netsmart Technologies, Inc., 961 F. Supp. 2d 964, 969-71 (D. Neb. 2013) (applying Union Electric in the context of transfer pursuant to 28 U.S.C. § 1404(a)).

Whether the court applies federal law or the law of either state connected with the change of venue motion, the legal test is the same. The South Dakota Supreme Court applied Bremen in O'Neill Farms, Inc. v. Reinert, 780 N.W.2d 55, 58 (S.D. 2010), and Colorado courts apply Bremen in the "vast majority of cases . . . ." Cagle v. Mathers Family Trust, 295 P.3d 460, 464 (Colo. 2013). Under Bremen, a clause is prima facie valid and enforceable unless it is (1) unreasonable and unjust, (2) the result of fraud or overreaching, or (3) enforcing it goes against a strong public policy in the forum state. Bremen, 407 U.S. at 15.

Plaintiffs argue the forum selection clause is invalid for the reasons discussed above, but they do not dispute its enforceability under Bremen or

8

relevant state law.  The employment agreement's forum selection clause is enforceable.[4]  See id.

## II. Does the forum selection clause encompass plaintiffs' causes of action?

Separate from their position on the validity of the forum selection clause, plaintiffs argue the clause does not encompass most of their causes of action.  (Docket 16 at pp.12-13).  Plaintiffs assert the majority of their causes of action are beyond the forum selection clause's scope because they connect to conduct occurring before the parties executed either agreement.  Id. (naming plaintiffs' first, second, fifth, sixth and seventh causes of action).  Plaintiffs allege their ninth cause of action, a slander claim, is not subject to the clause because it does not implicate the employment agreement's terms or relate to any provision in an agreement between the parties.  Id. at p. 13.

Defendants argue the causes of action plaintiffs mention fall within the employment agreement's forum selection clause because each cause of action concerns whether the employment agreement entitles plaintiffs to equity payments.  (Docket 22 at pp. 7-9).  As to plaintiffs' slander claim, defendants assert it is within the clause's scope because the content of the statements underlying the slander claim relate to John Duffield's employment with MPC.  Id. at p. 10.

---

[4]The parties do not dispute the exclusivity of the employment agreement's forum selection clause.  See Dunne v. Libbra, 330 F.3d 1062, 1064 (8th Cir. 2003) (discussing exclusivity).  Consequently, the court can find the clause enforceable without analyzing exclusivity.

The issue is whether plaintiffs' non-contract claims are subject to the forum selection clause.

### A. Applicable law

The Eighth Circuit established the standard for whether "a forum selection clause will apply to tort claims" in Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 693-94 (8th Cir. 1997). Under Terra, a forum clause encompasses tort claims if the situation meets any of "three generally applicable tests." Id. at 694. The first test asks whether the "tort claims ultimately depend on the existence of a contractual relationship between the parties [because] such claims are covered by a contractually-based forum selection clause." Id. (citing Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 203 (3d Cir. 1983)) (internal quotation marks omitted). The second test asks " 'whether resolution of the claims relates to interpretation of the contract.' " Id. (quoting Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 514 (9th Cir. 1988)). The third test states a forum selection clause covers a tort claim if the claim involves "the same operative facts as a parallel claim for breach of contract . . . ." Id. (citing Lambert v. Kysar, 983 F.2d 1110, 1121-22 (1st Cir. 1993)) (internal quotation marks omitted).

Applying this law, the court determines whether each cause of action is subject to the employment agreement's forum selection clause.

### B. Plaintiffs' contract and equitable causes of action

Plaintiffs' fourth cause of action is breach of contract. (Docket 7 at pp. 14-15). Neither party asserts the breach of contract claim is beyond the

forum selection clause's reach. The court finds the employment agreement's forum selection clause covers plaintiffs' breach of contract claim.

The fifth, sixth and seventh causes of action in plaintiffs' amended complaint are claims in equity and allege constructive trust, unjust enrichment, and money had and received, respectively. (Docket 7 at pp. 15-16). Plaintiffs specifically mention these causes of action as falling outside the forum selection clause's scope. (Docket 16 at pp. 11-13). The basis of each equitable claim is that the named defendants have not paid plaintiffs as defendants committed to in the employment agreement. Id. Although they are equitable and not tort claims, these causes of action revolve around facts operative in a breach of contract claim. See Terra, 119 F.3d at 694; cf. Third Ave. Trust v. Suntrust Bank, 163 F. Supp. 2d 215, 217-22 (S.D.N.Y. 2001) (finding an equitable claim subject to a forum selection clause); Bluesky Greenland Envtl. Solutions, LLC v. Rentar Envtl. Solutions, Inc., Case No. 12-81234, 2013    WL 12095168, at *5-6 (S.D. Fla. Apr. 19, 2013) (same); C. Thorrez Industries, Inc. v. LuK Transmissions Systems, LLC, No. 5:09-cv-01986, 2010 WL 1434326, at * 5-6 (S.D. Ohio Apr. 8, 2010) (same). The court finds the forum selection clause in the employment agreement encompasses plaintiffs' equitable causes of action because they meet Terra's third test. See Terra, 119 F.3d at 694.

### C. Plaintiffs' first three tort causes of action

The first three tort causes of action in plaintiffs' amended complaint are fraud, negligent misrepresentation and tortious interference. (Docket 7 at

11

pp. 9-14).  As with the equitable claims, each of these tort claims rests on plaintiffs' allegation certain defendants executed the employment agreement providing specific payments for plaintiffs, and those payments were not carried out.  See id.; cf. Micropower Group v. Ametek, Inc., 953 F. Supp. 2d 801, 808-09 (S.D. Ohio 2013) (finding negligent misrepresentation, fraud and tortious interference claims subject to a forum selection clause); Ormand v. Sanford Clinic, No. CIV. 09-4161, 2010 WL 2207745, at *2 (D.S.D. May 26, 2010) (finding a fraud claim subject to a forum selection clause).  For instance, whether plaintiffs can advance the claim defendants tortiously interfered with payment to which the employment agreement entitled plaintiffs turns on the same operative facts as the question of whether defendants breached the employment agreement.  The court finds the employment agreement's forum selection clause applies to plaintiffs' first three tort causes of action because Terra's third test is met.  See Terra, 119 F.3d at 694.

### D. Plaintiffs' aiding and abetting cause of action

The eighth cause of action in plaintiffs' amended complaint is for aiding and abetting.  (Docket 7 at pp. 16-18).  The parties disagree about whether this is a cognizable claim, and whether it is properly understood as a claim for civil conspiracy.  See Dockets 9 at pp. 20-21, 15 at pp. 13-14, & 21 at p. 10.  Those arguments aside, the acts plaintiffs claim defendants aided and abetted each other in committing concern the same operative facts as a breach of contract claim.  Plaintiffs allege the defendants assisted each other in not paying plaintiffs as the employment agreement provided.  (Docket 7 at pp. 16-17).

12

Under Terra's third test, this claim is subject to the forum selection clause in the employment agreement.  See Terra, 119 F.3d at 694.

### E. Plaintiffs' slander cause of action

Plaintiffs' final cause of action alleges the tort of slander.  (Docket 7 at pp. 17-18).  The parties fundamentally disagree about whether the relation between the alleged slander and Mr. Duffield's employment is sufficient to subject the claim to the forum selection clause.  See Dockets 16 at p. 13 & 22 at p. 10.

Plaintiffs' slander claim is beyond the forum selection clause's scope.  It is clear the slander cause of action does not share operative facts with a claim for breach of contract.  See Terra, 119 F.3d at 694.  Although the employment agreement's forum selection clause is broad, the slander allegation does not relate to the employment agreement or Mr. Duffield's employment.  See id. Defendants argue because the content of the alleged slander bears some conceivable connection with Mr. Duffield's status as an employee, there is a sufficient relationship to the employment agreement.  (Docket 22 at p. 10). Defendants also contend the alleged slander would not have occurred but for Mr. Duffield's employment with defendants.  Id.

But these points do not address the applicable legal standard.  The pivotal issue is that plaintiffs' slander claim does not bear a sufficient connection to the employment agreement's substance or Mr. Duffield's employment.  Plaintiffs' slander claim alleges during Mr. Duffield's employment with Murphy Pipe, Mr. Kinsella made oral statements to third parties asserting

13

Mr. Duffield committed criminal acts, is dishonest and is a thief. (Docket 7 at pp. 8-9). Even if Mr. Duffield was not employed with defendants or the employment agreement had different terms, there would be no notable impact on a claim particular defendants are liable for slander. Cf. Zichichi v. Jefferson Ambulatory Surgery Ctr., LLC, Civil Action No. 07-2774, 2007 WL 3353304, at *7 (E.D. La. Nov. 7, 2007) (finding a defamation claim not subject to a forum selection clause). Plaintiffs' slander claim does not depend upon the employment agreement's existence, relate to interpretation of the agreement, or share operative facts with a breach of contract claim. The court finds plaintiffs' slander cause of action is not subject to the forum selection clause in the employment agreement.

### III.   Should the court transfer the case?

When a defendant moves to change venue under 28 U.S.C. § 1404(a), and the case presents an enforceable forum selection clause applying to certain causes of action, the applicable legal standard is found in the United States Supreme Court decision Atl. Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex., 134 S. Ct. 568, 581-83 (2013). Under Atlantic Marine, the presence of a valid forum selection clause changes the ordinary § 1404(a) analysis in the following ways. Id. at 581. "First, the plaintiff's choice of forum merits no weight." Id. "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." Id. at 582. "As a consequence, a district court may consider arguments about public-interest factors only." Id.

The Court notes "the practical result [of this analysis] is that forum-selection clauses should control except in unusual cases." Id.

The question is whether this is the "unusual" case where public interest considerations outweigh a forum selection clause within a legitimate bargain the parties struck. Id. Plaintiffs argue their South Dakota residency and nearly 20 years of running a business in South Dakota support not transferring the case. (Docket 16 at p. 10). They also assert because some of their claims arose from defendants' travel to South Dakota, there are strong public policy reasons against transfer. Id. This case involves enforcement of a forum selection clause and claims relating to contract law, equity and tort law. The court does not find South Dakota public policy strongly against transferring the claims subject to the forum selection clause. See supra Section I.C. (citing South Dakota policy on enforcement of forum selection clauses); see also (Docket 9 at p. 3) (noting South Dakota and Colorado law do not "substantively differ" on plaintiffs' causes of action). This is not the "unusual" case where firm public interest factors weigh against transfer. See Atl. Marine, 134 S. Ct. at 582; In re Union Elec. Co., 787 F.3d 903, 909-10 (8th Cir. 2015).

Because the plaintiffs' slander claim is not subject to the forum selection clause, the court separates it from the other eight causes of action and does not transfer it. The court's "twin commitments to upholding forum selection clauses where [they] apply and deferring to a plaintiff's proper choice of forum" require the court to treat plaintiffs' slander claim separately. See Phillips v.

15

Audio Active Ltd., 494 F.3d 378, 393 (2d Cir. 2007); Traton News, LLC v. Traton Corp., 914 F. Supp. 2d 901, 908-09 (S.D. Ohio 2012) (collecting cases); cf. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985) (holding that district courts are required to compel arbitration of claims subject to arbitration clause "even if the result is 'piecemeal' litigation"). The court finds transfer appropriate as to plaintiffs' first eight causes of action and not the ninth.

**DEFENDANTS' MOTION TO DISMISS**

### IV. Do plaintiffs fail to state a slander claim upon which the court can grant relief?

#### A. Applicable law and legal standard

As stated above, the court has diversity jurisdiction in this case. See supra Section I.A. Federal courts sitting in diversity apply the substantive law of the forum state. See Kozlov v. Associated Wholesale Grocers, Inc., 818 F.3d 380, 388 (8th Cir. 2016). Because plaintiffs' slander claim is separate from the parties' agreed upon law and forum choices, and it requires application of substantive law, the court looks to South Dakota law for the elements of a slander claim. See id.

Defendants base their motion to dismiss plaintiffs' slander cause of action on Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) permits dismissal of a claim if the plaintiff fails to state a claim upon which relief can be granted. Id. Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Two "working principles" underlie Rule 12(b)(6)'s analysis.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  First, courts are not required to accept as true legal conclusions "couched as . . . factual allegation[s]" in the complaint.  See id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555) (internal quotation marks omitted).  The court does, however, "take the plaintiff's factual allegations as true."  Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009).  Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 678 (citation omitted).  The complaint is analyzed "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  Braden, 588 F.3d at 594.

**B. Discussion**

Defendants argue plaintiffs fail to meet the Rule 12(b)(6) standard because plaintiffs do not provide more detail on the alleged slander's content and who heard the oral statements.  (Docket 9 at p. 15-16).  In response, plaintiffs assert the specific facts they provided regarding who made the statement, when the statement was uttered, and the statement's topic are sufficient under Rule 12(b)(6).  (Docket 15 at pp. 16-17).  In the alternative, plaintiffs request leave to amend their complaint and include more factual detail on the slander claim, including the name of the person to whom Mr. Kinsella allegedly made the statement.  Id.

Rule 15 of the Federal Rules of Civil Procedure governs plaintiffs' ability to amend their complaint.  Fed. R. Civ. P. 15.  When the motion to amend comes more than 21 days after serving the complaint, plaintiffs need either the written consent of opposing parties or the court's leave in order to amend.  Fed. R. Civ. P. 15(a)(2).  Courts "freely give leave when justice so requires."  Id.  Because plaintiffs lack the written consent of defendants, the court must decide whether to give them leave to amend the complaint or deny the motion as futile.

The United States Court of Appeals for the Eighth Circuit holds it can be error for a district court to dismiss a complaint because of deficient allegations if the district court does not give the plaintiff an opportunity to amend.  See Freeman v. Bechtel Const. Co., 87 F.3d 1029, 1032 (8th Cir. 1996).  It is not an error to dismiss, however, when plaintiffs do not request a chance to amend or when they request permission for "a classic fishing expedition."  See id. ("[Plaintiffs] requested an opportunity to take numerous depositions, confirming that their defamation allegations were made without supporting facts in the hope they would be permitted to embark upon a classic fishing expedition.").  The possibility of error decreases further if plaintiffs do not "explain the substance of [their] proposed amendment."  Misischia v. St. John's Mercy Health Sys., 457 F.3d 800, 805-06 (8th Cir. 2006).

The South Dakota legislature defines slander as:

> a false and unprivileged publication . . . which . . . [t]ends directly to injure [a person] in respect to his office, profession, trade, or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly

18

>requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profit[.]

SDCL § 20-11-4; see Guilford v. Northwestern Pub. Serv., 581 N.W.2d 178, 180 (S.D. 1998).  Plaintiffs' slander claim in the amended complaint provides general details, including who they believe made the statements and the topic of the statements.  (Docket 7 at pp. 17-18).  In response to defendants' motion to dismiss, plaintiffs make a request to amend their complaint further so they can provide the identity of the person who heard the alleged slander and "elaborate on . . . [the] slanderous statements . . . ."  (Docket 15 at pp. 16-18).  Although plaintiffs did not file a formal motion to amend, their request is not for "a classic fishing expedition," and they are specific about what they will add in the second amended complaint.  Freeman, 87 F.3d at 1032.  The court grants plaintiffs leave to file a second amended complaint providing more details on their slander claim.

## ORDER

Based on the above analysis, it is

ORDERED that defendants' motion to change venue (Docket 11) is granted as to the first eight causes of action in plaintiffs' amended complaint.  Plaintiffs' first eight causes of action are transferred to the United States District Court for the District of Colorado, Denver Division.

IT IS FURTHER ORDERED that defendants' motion to change venue (Docket 11) is denied as to plaintiffs' slander cause of action.

IT IS FURTHER ORDERED that plaintiffs may file a second amended complaint as to the slander cause of action. Plaintiffs must file the second amended complaint by **January 25, 2017**.

IT IS FURTHER ORDERED that defendants' motion to dismiss for failure to state a claim or alternatively for a more definite statement (Docket 8) is denied as moot because the court grants plaintiffs leave to file a second amended complaint.

Dated January 10, 2017.

                              BY THE COURT:

                              /s/ *Jeffrey L. Viken*
                              JEFFREY L. VIKEN
                              CHIEF JUDGE